(No. 11071.—Cause transferred.)
THOMAS B. JACK, Appellee, *vs.* A. L. MCCONKEY *et al.*—
(RYLAND B. SHAW, Appellant.)

*Opinion filed February 21, 1917.*

FREEHOLD—*when no freehold is involved in a controversy over exchange of lands.* No freehold is involved on appeal from a decree of the circuit court awarding damages for misrepresentation in an exchange of lands and making the amount a lien on part of the property, where the deeds to the respective lands have been delivered and the complaining party does not seek to rescind the transaction but claims damages for failure of the other party to clear his title and for misrepresentation with reference to lines, corner stones and the amount of acreage of overflowed lands, and demands the return of the portion of the consideration placed in escrow pending his acceptance of the abstract of title.

APPEAL from the Circuit Court of Macon county; the Hon. GEORGE A. SENTEL, Judge, presiding.

HUGH CREA, HUGH W. HOUSUM, and FRED HAMILTON, for appellant.

HERRICK & HERRICK, and REDMON, HOGAN & REDMON, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

A. L. McConkey and Ryland B. Shaw on July 13, 1911, entered into a written agreement to exchange properties, by which agreement McConkey was to convey to Shaw 320 acres of land, more or less, described, and situated in Adams county, Illinois, subject to an $11,000 incumbrance, and Shaw agreed to convey to McConkey a domino factory as per invoice and things belonging to the factory, and 200 acres of land in Marion county, Illinois, subject to incumbrances of $4300; also a mortgage for $3350 and one for $700, with interest, on lots in Decatur, and a red automobile. The land was subject to the inspection of the parties, and if either was not satisfied then the contract was

to be void. If after acceptance either failed to comply with his part of the contract he should pay as liquidated damages $1000. On July 14, the day after the contract was signed, the parties went to Adams county, examined the land and wrote on the contract: "This contract accepted by both parties.—A. L. McConkey, R. B. Shaw." The mortgages on the Decatur property had been foreclosed, and by mutual agreement between McConkey and Shaw the certificates of purchase were by Shaw on August 9, 1911, assigned in blank and deposited with Thomas B. Jack, an attorney, to hold in escrow pending the acceptance by Shaw of the abstract of title to the Adams county land, and when the title was accepted the certificates of purchase were to be delivered to McConkey. The deed to Shaw of the Adams county land was dated July 14, 1911, and was acknowledged July 29, 1911. It was delivered to Shaw August 9, 1911, and filed by him for record August 17, 1911. The deed to McConkey for the Marion county land was delivered the same day the deed to Shaw for the Adams county land was delivered. Shaw afterwards objected to the abstract of title and finally demanded the surrender to him by Jack of the certificates of purchase for the Decatur property. McConkey also demanded them, and Jack filed a bill of interpleader asking that they each be required to answer and set forth their title. McConkey and Shaw answered, and Shaw filed a cross-bill. The cross-bill sets out the written agreement of July 13, the exchange of the deeds and the deposit of the certificates of purchase in escrow with Jack, and alleges this was all done subject to the approval of title to the Adams county land by Shaw; that the abstract furnished by McConkey did not show a merchantable title; that cross-complainant so notified McConkey, but he neglected and refused to clear the title. The cross-bill further alleges that when the parties went to Adams county to examine the land, which was river-bottom land and was protected from overflow by a levee, McConkey misrepre-

sented the location of the lines and corner stones; that he pointed out and represented that there were only three acres west of the levee which were subject to overflow; that cross-complainant believed and relied upon the representation in accepting the contract, but he subsequently learned there were twenty-eight acres of land west of the levee subject to overflow and that the location of the corner stones on the west of the land had been falsely and fraudulently misrepresented by McConkey, whereby the cross-complainant was damaged $5000. The cross-bill sets up circumstances which it alleged made a rescission impossible, and avers that McConkey should be compelled to perfect his title, so far as it can reasonably be done, to the Adams county land or pay the damages to the cross-complainant, to be ascertained and fixed by the court, together with damages resulting from his misrepresenting the corner stones of the land and the amount of it subject to overflow, and that such damages be decreed to be a lien against the premises described in the certificates of purchase mentioned in the bill.

Upon a hearing the court entered a decree finding Shaw was not entitled to any damages or other relief on account of his objection to the abstract to the Adams county land. The decree finds that McConkey was guilty of constructive fraud in misrepresenting the corner of the Adams county land and the amount of land west of the levee, and that Shaw was entitled to damages on that account in the sum of $244.16 and $12.50 for rent paid by him on the domino factory, which sums, with interest, amounted to $320.66, and the payment of said amount was made a lien against the Decatur property. Shaw appealed from that decree directly to this court.

No freehold being involved in this litigation nor any other question which gives this court jurisdiction to entertain this appeal, the cause is transferred to the Appellate Court for the Third District.        *Cause transferred.*